1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10 | BROOKDALE SENIOR LIVING
COMMUNITIES, INC.,

11

Plaintiff,

12

v.

13

LORRAINE J. HARDY,

14

Defendant.

15

CASE NO. C15-96 MJP

ORDER ON MOTION TO COMPEL

16

17

THIS MATTER comes before the Court on Plaintiff Brookdale Senior Living

18

Community's ("Brookdale's") Motion to Compel Arbitration, Stay Proceedings, and Enjoin

19

Defendants from Pursuing the State Court Action. (Dkt. No. 2.) Having reviewed the Motion,

20

Defendant Lorraine J. Hardy's ("Ms. Hardy's") Response (Dkt. No. 16), Brookdale's Reply

21

(Dkt. No. 17), and all related papers, the Court hereby DENIES the Motion as detailed below.

22

**Background**

23

Defendant Ms. Hardy, who suffers from dementia, was in her eighties when she was

24

moved from Georgia to her son Warren Weber's home in Edmonds. (Weber Decl., Dkt. No. 12,

1  Ex. 1 at 1–2.) After she was found wandering outside at night by police, she was admitted to a

2  hospital and treated for a urinary tract infection. (Id.) During Ms. Hardy's hospital stay, Mr.

3  Weber scrambled to find more suitable accommodations for her and chose Clare Bridge of

4  Lynnwood, an assisted living facility. (Id.) On January 17, 2008, the hospital announced it was

5  discharging Ms. Hardy that day. (Id. at 2.) Mr. Weber went to Clare Bridge of Lynnwood

6  (operated by Defendant Brookdale) and asked to have Ms. Hardy admitted. (Id.) He was asked to

7  sign paperwork to have her admitted, including the Alterra Residency Agreement, which he had

8  not seen previously. (Id.) After "no more than 5 minutes" on the Residency Agreement, Mr.

9  Weber says he signed the agreement. (Id.) Additional factual disputes about the content of the

10 Agreement are discussed further below.

11     After Ms. Hardy suffered falls and injuries during her stay at Clare Bridge of Lynnwood,

12 her representatives filed a complaint in state court alleging neglect of a vulnerable adult pursuant

13 to RCW 74.34 and negligence by health care providers pursuant to RCW 7.70 and seeking a

14 declaration that the Alterra Residency Agreement is unconscionable. (See Dkt. No. 12, Ex. 6 at

15 40.) Because the complaint included claims against a Washington citizen (Brandon Dalke, the

16 former executive director of Clare Bridge of Lynnwood, see Dkt. No. 26 at 1), the case was not

17 removable to federal court. Brookdale now seeks to compel arbitration of Ms. Hardy's claims

18 against it. (Dkt. No. 1, 2.)

19                                 **Discussion**

20     I.       Existence of Agreement to Arbitrate

21     This dispute is highly unusual in that while Brookdale has a form agreement on

22 arbitration it uses in facilities across the country, it is not clear in this case whether the parties

23 signed the complete agreement. The copies of the alleged agreement in the possession of both

24 parties are missing the critical page 16, which contains a number of substantive provisions

1   detailing how the arbitration is to be conducted. (See Dkt. No. 17 at 6; Dkt. No. 12 at 5; Dkt. No.

2   12-6 at 17.) Defendant argues the agreement Mr. Weber signed is unconscionable under

3   Washington law whether or not it contains page 16; however, page 16 does contain several terms

4   Defendant contends are unconscionable. (Dkt. No. 12 at 28.) Plaintiff initially argued page 16

5   was included in the agreement Mr. Weber signed (Dkt. No. 2 at 4 n.1), but reverted in its reply

6   briefing to the position that page 16 was missing at the time of the signing and therefore never

7   became part of the parties' agreement. (Dkt. No. 17 at 6.)

8               A.  Legal Standard on Motion to Compel

9           The Court's role on a motion to compel is limited to determining (1) whether a valid

10  agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute

11  at issue. Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

12  Agreements to be arbitrated may be invalidated by "generally applicable contract defenses, such

13  as fraud, duress, or unconscionability." AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740,

14  1746 (2011). The Court looks to Washington contract law to determine the validity of the

15  parties' arbitration clause. Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir. 2002).

16  On the issue of validity, "a court applies a standard similar to the summary judgment standard of

17  [Federal Rule of Civil Procedure] 56." Concat LP v. Unilever, PLC, 350 F. Supp. 2d 796, 804

18  (N.D. Cal. 2004). For the purpose of this motion, then, the Court views the evidence on the

19  alleged validity and unconscionability of the agreement under Washington law in the light most

20  favorable to the nonmovant, Defendant.

21              B.  Parties' Mutual Assent to Arbitration

22          Plaintiff contends the arbitration agreement does not contain page 16, clearly indicates

23  the parties' intention to arbitrate disputes, and contains all the essential terms for a complete

24

1    agreement. (Dkt. No. 17 at 6.) Defendant argues that Plaintiff cannot prove mutual assent to the

2    arbitration terms and the arbitration agreement is invalid. (Dkt. No. 12 at 28–29.)

3         Based on the evidence in the record, page 16 may not have been included in the

4    document presented to Mr. Weber. (Dkt. No. 19 at 1; Dkt. No. 17 at 6.) For a contract to exist

5    there must be mutual assent to its essential terms. Jacob's Meadow Owners Ass'n v. Plateau 44

6    II, LLC, 139 Wn. App. 743, 765 (2007). A term is material such that failure to assent to it

7    precludes contract formation where the provision would have been a condition of acceptance by

8    one party. See Ticor Title Co. v. Summit Uniserv Council, No. 42394–4–II, 2013 WL 4009559,

9    *4 (Wn. App. Aug 6, 2013).  Pages 13 to 15 and 17 to 18 of the agreement set out coverage,

10   criteria for choosing an arbitrator, discovery procedures, and a limitation of liability provision,

11   but most of the provisions governing the substantive law and costs applicable to the arbitration

12   appear on the missing page 16. (See Dkt. No. 12-6 at 14–19.) For example, page 16 specifies that

13   Washington law applies "except as otherwise stated in this Arbitration Provision," eliminates any

14   right to appeal, requires costs to be split by the parties and eliminates any right to attorney's fees,

15   requires confidentiality "in all respects," and states that the agreement survives the death of the

16   resident. (Dkt. No. 12-6 at 17.) Regardless of its shifting positions for the purpose of litigation, it

17   is doubtful whether Brookdale would have accepted the contract had Mr. Weber proposed

18   removing page 16 from its standard agreement. Viewing the evidence in the light most favorable

19   to Mr. Weber, the terms on page 16 were essential to the agreement and a contract was not

20   formed in their absence.

21        It is also black letter law that the acceptance of an offer must be identical with the offer;

22   otherwise, there is no meeting of the minds and no contract. See Sea–Van Inv. Assocs. v.

23   Hamilton, 125 Wn.2d 120, 126 (1994). Brookdale intended to enter into a contract including the

24

1    terms on page 16 and thought that it had done so, as indicated by the fact that counsel for

2    Brookdale submitted page 16 as part of the contract even knowing that its copy was missing that

3    page. (See Dkt. No. 12-6 at 17 (labeled "exemplar of page 16").) It was only after Defendant

4    submitted its Response to the Motion did counsel for Brookdale realize the document might have

5    been missing page 16 at the time of the signing. These facts further indicate there was no

6    meeting of the minds on essential terms of the contract.

7            C.  Unconscionability

8            Even if there is an agreement to the essential terms of the contract, including those on

9    page 16, the Alterra Residency Agreement is not valid because it is unconscionable. "In

10   Washington, either substantive or procedural unconscionability is sufficient to void a contract."

11   Gandee v. LDL Freedom Enterprises, Inc., 176 Wn.2d 598, 603 (2013) (citation omitted).

12           1.  Procedural Unconscionability

13           To determine whether a party lacked meaningful choice in entering into an agreement to

14   arbitrate, making the agreement procedurally unconscionable, courts look to whether the plaintiff

15   had a reasonable opportunity to understand the terms of the contract and whether the important

16   terms were hidden in a maze of fine print. See Zuver v. Airtouch Commc'ns, Inc., 153 Wn.2d

17   293 (2004). Although Mr. Weber appears to have been under some time pressure in considering

18   the document because his mother was being discharged from the hospital that day, it cannot be

19   said that the terms of the agreement were hidden or obscured in their presentation. The

20   arbitration provisions appeared in a normal typeface and covered several pages in the larger

21   agreement. (See Dkt. No. 12, Ex. 6.) Mr. Weber initialed in several places to show his assent to

22   the agreement. (See id. at 18–19.) Mr. Weber has not alleged that he requested additional time to

23   review the document or that his questions about the document were left unanswered. (See Dkt.

24   No. 12, Ex. 1.) The agreement is not procedurally unconscionable.

2.   Substantive Unconscionability

A term is substantively unconscionable where it is "one-sided or overly harsh,"
"shocking to the conscience," or "exceedingly calloused." <u>Gandee</u>, 176 Wn.2d at 603 (internal
quotation marks and citations omitted). Severance is the usual remedy for substantively
unconscionable terms, but where such terms pervade an arbitration agreement, the Court refuses
to sever those provisions and declares the entire agreement void. <u>Id.</u> Defendant argues multiple
terms of the arbitration agreement are unconscionable, and that because they pervade the
agreement, they are not severable. (Dkt. No. 12 at 22.)

a.   Cost-Splitting and Waiver of Attorney's Fee

Defendant first argues the provision in which the parties agree to split the costs of
arbitration and expressly waive the right to statutory attorney's fees is unconscionable under
Washington law. (<u>See</u> Residency Agreement, Dkt. No. 3 at 26 ("The arbitrator's fees and costs
associated with the arbitration shall be divided equally among the parties, unless the Resident
Party is proven indigent. The parties shall bear their own attorneys' fees and costs and hereby
expressly waive any right to recover attorney fees or costs, actual or statutory.").) The
Washington Supreme Court's holding in <u>Adler v. Fred Lind Manor</u>, 153 Wn.2d 331, 354–55
(2004), is directly on point. <u>Adler</u> held that an attorney's fees provision in an arbitration
agreement, requiring the parties to bear their own attorney's fees and costs, was unconscionable
because it "effectively undermines a plaintiff's rights to attorney fees [. . .] and helps the party
with a substantially stronger bargaining position and more resources, to the disadvantage of an
employee needing to obtain legal assistance." <u>Id.</u> at 355. The statutory claim pursued by
Defendant Ms. Hardy (the state court plaintiff), like the claim in <u>Adler</u>, provides that a prevailing
plaintiff "shall be awarded his or her actual damages, together with the costs of the suit,
including a reasonable attorneys' fee." RCW 74.34.200(3); <u>cf.</u> <u>Adler</u>, 153 Wn.2d at 354 n.12

1  ("RCW 49.60.030(2) provides that prevailing plaintiffs shall 'recover the actual damages

2  sustained by the person, or both, together with the cost of suit including reasonable attorneys'

3  fees.'"). Explicit elimination of the right to attorney's fees, particularly in a statute designed to

4  protect the neediest Washington citizens, is unconscionable.

5                                    b.  Mutuality

6          Defendant next questions the mutuality of the arbitrable subject matter. The arbitration

7  agreement encompasses "[a]ny and all claims or controversies [. . .] excluding any action for

8  eviction." (Dkt. No. 3 at 23.) A subject-matter exclusion may also be nominally mutual, yet have

9  the impermissible effect of being so one-sided and harsh that it is substantively unconscionable.

10  See Zuver v. v. Airtouch Communications, Inc., 153 Wn.2d 293, 318 & n.16 (2004). Defendant

11  points out only Brookdale, in its capacity as landlord, would file an eviction action, while any

12  cause of action belonging to Ms. Hardy would be subject to mandatory arbitration. In Luna v.

13  Household Finance Corp., 236 F.Supp.2d 1166, 1180 (W.D. Wash. 2002), this Court found that a

14  similar provision excluding foreclosure-related actions in an arbitration provision between a

15  borrower and a mortgage lender weighed toward unconscionability under Washington law. Here,

16  too, giving a landlord recourse to a state's police powers while forbidding a resident to take

17  advantage of, for example, a court's powers of injunctive relief weighs toward unconscionability

18  under Washington law. (The Court notes that a petition for review of the only Washington Court

19  of Appeals case cited by Plaintiff in its Reply in defense of its subject-matter exclusion was

20  granted by the Washington Supreme Court and the case was remanded for reconsideration in

21  light of Zuver and Adler, see above. See Walters v. A.A.A. Waterproofing, Inc., 153 Wn.2d

22  1023 (2005).)

23

24

c.  Discovery Limitations

The Supreme Court has noted that limitations on discovery are to be expected in an arbitration agreement, one of the major justifications for which is the lower cost of arbitration as compared to a full court proceeding. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31 (1991) ("Although those procedures might not be as extensive as in the federal courts, by agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration. Indeed, an important counterweight to the reduced discovery in NYSE arbitration is that arbitrators are not bound by the rules of evidence.") (internal quotation marks and citation omitted); see also AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740, 1747 (2011). However, the Supreme Court cautioned that the arbitration procedure in Gilmer (which "allow[ed] for document production, information requests, depositions, and subpoenas") did not present a situation where plaintiffs were deprived of a "fair opportunity to present their claims." Gilmer, 500 U.S. at 31. In the Ninth Circuit, restrictions on discovery that are one-sided may contribute to a finding that the entire arbitration agreement is substantively unconscionable, even where the restrictions standing alone might be permissible. See Ferguson v. Countrywide Credit Indus., Inc., 298 F.3d 778, 786–87 (9th Cir. 2002) (finding a discovery provision one-sided under California law because it placed limits on the number of subjects on which corporate representatives could be deposed, but no analogous limits for employees).

Although certain other discovery limitations may not lie beyond the pale, the arbitration agreement goes too far where it limits both sides to depositions of expert as opposed to fact witnesses, and does not allow the arbitrator to expand the number of depositions. (See Dkt. No. 3 at 25.) While the provision is facially neutral, Defendant points to the fact that an assisted-living facility would have access to its employees to establish the facts giving rise to a claim against the

1  facility, while a plaintiff without access to those same employees would have far greater

2  difficulty uncovering sufficient facts to prepare for arbitration (particularly where, as here, the

3  plaintiff suffers from dementia and may not be an adequate witness to her own injuries). (Dkt.

4  No. 12 at 11–12.) The exclusion cannot be justified on grounds of expense, because it costs more

5  to depose an expert. Like the facially neutral but in fact one-sided subject-matter exclusion, this

6  deposition limitation weighs toward unconscionability. Cf. Ostroff v. Alterra Healthcare Corp.,

7  433 F. Supp. 2d 538, 545 (E.D. Penn. 2006) (holding the expert deposition provision the Alterra

8  Residency Agreement unconscionable under Pennsylvania law and attorney ethics rules).

9  d.  Confidentiality

10  Defendant further objects to the restrictive confidentiality provision. (Dkt. No. 12 at 18;

11  Dkt. No. 3 at 26 ("The arbitration proceeding shall remain confidential in all respects, including

12  the Demand for Arbitration, all arbitration filings, deposition transcripts, documents produced or

13  obtained in discovery, or other material provided by and exchanged between the parties and the

14  arbitrator's findings of fact and conclusions of law[….]").) Though facially neutral, strict

15  confidentiality of arbitration proceedings is widely acknowledged to benefit repeat players, such

16  as assisted living facilities, to the detriment of one-time litigants, such as residents. See Luna,

17  236 F. Supp. 2d at 1180. The Washington Supreme Court emphasized Washington's strong

18  policy that justice should be administered openly in holding a similar confidentiality provision

19  unconscionable. McKee v. AT&T Corp., 164 Wn.2d 372, 398–99 (2008), abrogated on other

20  grounds by Concepcion, 131 S.Ct. 1740. Total confidentiality is unconscionable in the context of

21  Washington's elder-abuse statute.

22  d.  Waiver of the Right to Appeal

23  Defendant also argues the provision eliminating a right to appeal is unconscionable

24  because it eliminates statutory rights to appeal under the FAA. (See Dkt. No. 12 at 15; Dkt. No. 3

1  at 26 ("The arbitrator's decision shall be final and binding without the right to appeal.").) While

2  Defendant is correct that the limited right to appeal an arbitration award through the statutory

3  grounds enumerated in 9 U.S.C. § 10(a) (fraud, impartiality, misconduct, etc.) may not be

4  eliminated, see In re Wal-Mart Wage and Hour Employment Practices Litigation, 737 F.3d 1262,

5  1268 (9th Cir. 2013), a no-appeal provision is not interpreted by the federal courts to foreclose

6  such a suit. Id. at 1265–68. The provision is not unconscionable so much as it is ineffective (at

7  least insofar as it purports to eliminate the right to appeal on 9 U.S.C. § 10(a) grounds). Still, the

8  distinct possibility that the provision might mislead plaintiffs into forgoing an appeal on 9 U.S.C.

9  § 10(a) grounds contributes to the agreement's unconscionability.

10                               e.  Limitation of Non-Economic Damages

11         Finally, the Residency Agreement contains a limitation of liability provision, which does

12  not cap economic damages but forbids punitive damages and states that "[n]oneconomic

13  damages, such as pain and suffering, shall be limited to a maximum of $250,000." (Dkt. No. 3 at

14  27.) Because only a resident is likely to accrue noneconomic damages, while the assisted living

15  facility is subject to no cap on claims for unpaid assisted living charges (though interest and late

16  fees are not permitted), the provision is one-sided. (Defendant makes no arguments regarding

17  punitive damages.) Whether the provision is so harsh and one-sided as to be unconscionable is a

18  closer question. While Defendant points to Hill v. Garda CL Northwest, Inc., 179 Wn.2d 47, 55–

19  56 (2013), for its holding that "a limitation on back-pay damages that would otherwise be

20  allowed [under state law] is unconscionable," the limitation in Garda was on the number of

21  months of backpay damages available to employees in a wage and hour case—the central

22  entitlement mandated in such an action. Here, there is no limit on economic damages such as

23  medical expenses, and the cap on noneconomic damages may not be so extreme as to foreclose

24  the possibility of legal representation in such a case—so long as attorney's fees are available. In

1   combination with the waiver of attorney's fees discussed above, however, the non-economic

2   damages cap contributes to the agreement's unconscionability.

3          Furthermore, Defendant observes that Washington law prohibits licensed long-term care

4   facilities from "requir[ing] or request[ing] residents to sign waivers of potential liability for

5   losses of personal property or injury." RCW 70.129.105. This raises the question whether the

6   limitation of liability provision is void because Brookdale violated Washington law in seeking it.

7   See Vedder v. Spellman, 78 Wn.2d 834, 838 (1971) ("A contract that is contrary to the terms and

8   policy of a statute is illegal and unforceable."); see also PacifiCare Health Systems, Inc. v. Book,

9   538 U.S. 401, 405–06 (2003) (holding that where provisions purporting to limit damages in an

10  arbitration agreement could conflict with federal law providing for those damages, the question

11  of the provisions' enforceability is for the arbitrator to decide). The inclusion of a provision in an

12  arbitration agreement that is likely void as against public policy weighs toward unconscionability

13  as well.

14               3.   Severability

15         Four key terms in the Alterra Residency Agreement are unconscionable under

16  Washington law, while two more may be wholly or partially unenforceable and thus misleading

17  to a potential claimant. "Severing these clauses significantly alters both the tone of the arbitration

18  clause and the nature of the arbitration contemplated by the clause." Hill v. Garda CL Northwest,

19  Inc., 179 Wn.2d at 58; see also Luna, 236 F. Supp. 2d at 1183 (holding that unconscionable

20  confidentiality and fee sharing provisions, as well as two other provisions not applicable here,

21  "are interrelated and each serves to magnify the one-sidedness of the others," thus causing the

22  arbitration agreement to be "tainted with illegality" and "unenforceable"). The arbitration

23  provision of the Alterra Residency Agreement is consistently tilted in favor of the assisted living

24  facility and against residents; indeed, the agreement seems less invested in reducing expenses

1  and saving time for both parties than in limiting the ability of a resident to bring a viable case.

2  Such an agreement is not enforceable under Washington law.

3        II.      Anti-Injunction Act

4        In light of Plaintiff's request that the state court stay its action in favor of this arbitration

5  motion (Dkt. No. 25), the Court further notes that even if the agreement were not unconscionable

6  and unenforceable, the Court would deny Plaintiff's request for an injunction against the state

7  proceeding. In its Motion, Plaintiff Brookdale asks the Court not only to issue an order

8  compelling Ms. Hardy to arbitrate her claims against Brookdale, but also asks the Court to enjoin

9  further state proceedings against both Brookdale and its employee, Mr. Dalke, who was not

10  joined in this action because he is a Washington citizen and would defeat jurisdiction.

11        The Ninth Circuit does not expect district courts to enjoin state proceedings when

12  granting motions to compel arbitration, explaining in dicta that a petition filed in federal court to

13  compel arbitration "is much less intrusive on state court jurisdiction [than removing the state

14  court case to federal court]. In fact [. . .] it does not preclude the state action from proceeding in

15  any way." Geographic Expeditions v. Estate of Jason Lhoka, 599 F.3d 1102, 1107 n.6 (9th Cir.

16  2010). Generally, federal and state courts go to great lengths to respect one another's respective

17  jurisdictions.

18        One example of the way these federalism aims is enforced is the Anti-Injunction Act,

19  "which is designed to preclude unseemly interference with state court proceedings." Negrete v.

20  Allianz Life Ins. Co. of N. Am., 523 F.3d 1091, 1100 (9th Cir. 2008). The Anti-Injunction Act

21  states that "[a] court of the United States may not grant an injunction to stay proceedings in a

22  State court except as expressly authorized by Act of Congress, or where necessary in aid of its

23  jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. A party seeking such an

24

1    injunction must rely on one of those three exceptions, and "the exceptions should not be enlarged

2    by loose statutory construction." <u>Negrete</u>, 523 F.3d at 1101.

3            Although Brookdale wholly neglected to mention which exception to the Anti-Injunction

4    Act it was relying on in its initial briefing, it settled on "necessary [. . .] to protect or effectuate

5    its judgments" in response to the Court's order to show cause. (Dkt. No. 23 at 6–7.) It cites

6    several out-of-Circuit district court cases and a Sixth Circuit case holding that this third

7    exception to the Anti-Injunction Act applies to injunctions issued in connection with motions to

8    compel arbitration. <u>See</u> <u>Great Earth Cos., Inc. v. Simons</u>, 288 F.3d 878, 894 (6th Cir. 2002). A

9    circuit split exists on this issue. <u>See also</u> <u>Zurich Am. Ins. Co. v. Sup. Ct.</u>, 326 F.3d 816, 824–25

10   & n.6 (7th Cir. 2003); <u>Am. Family Life Ins. v. Biles</u>, 714 F.3d 887, 893 (5th Cir. 2013). <u>Cf.</u> <u>G.C.</u>

11   <u>& K.B. Investments, Inc. v. Wilson</u>, 326 F.3d 1096, 1106–07 (9th Cir. 2003) (affirming a district

12   court injunction against state proceedings to protect the district court's previous judgment

13   confirming an arbitration award).

14           "[A]n essential prerequisite for applying the relitigation exception is that the [ . . . ] issues

15   which the federal injunction insulates from litigation in state proceedings actually have been

16   decided by the federal court." <u>Chick Kam Choo v. Exxon Corp.</u>, 486 U.S. 140, 148 (1988). "A

17   district court may properly issue an injunction under the relitigation exception if 'there could be

18   an actual conflict between the subsequent state court judgment and the <u>prior</u> federal judgment.'"

19   <u>G.C. & K.B. Investments</u>, 326 F.3d at 1107 (emphasis added) (citing <u>Blalock Eddy Ranch v.</u>

20   <u>MCI Telecomms. Corp.</u>, 982 F.2d 371, 375 (9th Cir. 1992)). The Court agrees with the 7th

21   Circuit that a preemptive injunction to protect a prospective or concurrent ruling lacks the

22   essential prerequisite of a prior federal judgment. <u>See</u> <u>Zurich Am.</u>, 326 F.3d at n.6 ("[The

23

24

1   relitigation exception] does not apply in this case because the district court had not yet ruled on

2   Zurich's petition.").

3          Moreover, the Court does not rule in any respect on the arbitrability of Ms. Hardy's

4   claims against Mr. Dalke, despite his declaration, submitted by counsel for Brookdale,

5   announcing he would be amenable to arbitration and will submit to this Court's interpretation of

6   the arbitration provision. (See Dkt. No. 26.) Mr. Dalke is not a party to this suit and is not bound

7   by this Court's orders, particularly prior to final judgment. Brookdale chose to file a separate

8   action in federal court in addition to filing a motion to compel in state court; it invited conflicting

9   rulings and cannot avoid them through unilateral action now.

10                                          **Conclusion**

11         The Court DENIES Plaintiff's Motion to Compel Arbitration because no contract was

12   formed. Even if a contract was formed, it is unconscionable. Even if the contract were not

13   unconscionable, the Court would still deny Plaintiff's request for an injunction against the state

14   court proceeding in light of the Anti-Injunction Act and the Court's lack of jurisdiction over Mr.

15   Dalke.

16

17         The clerk is ordered to provide copies of this order to all counsel.

18         Dated this 5th day of June, 2015.

19

20                                          Marsha J. Pechman

21                                          Chief United States District Judge

22

23

24

ORDER ON MOTION TO COMPEL- 14